IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


SUSAN S. on behalf of                                    No.  6:19-cv-01222-HZ
DONALD S. (deceased),[1]
                                                         OPINION & ORDER
                Plaintiff,

        v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                Defendant.


Katherine L. Eitenmiller
Mark A. Manning
Harder, Wells, Baron & Manning, P.C.
474 Willamette Street
Eugene, OR 97401

        Attorneys for Plaintiff

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

Renata Gowie
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

Jeffrey E. Staples
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff Susan S. brings this action on behalf of Donald S. [2] (deceased) seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI") between Plaintiff's amended alleged onset date June 24, 2013, and November 13, 2015. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). The Court reverses the Commissioner's decision and remands this case for further administrative proceedings.

## PROCEDURAL BACKGROUND

      Plaintiff applied for DIB and SSI on August 25, 2015, alleging an onset date of August 15, 2010. Tr. 16.[3]  Plaintiff's date last insured is December 31, 2016. Tr. 84.[4] His application was

---

[2] As used throughout this opinion, Plaintiff refers to Donald S., the claimant in the underlying action.

[3] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 10.

[4] There is a discrepancy in the record as to Plaintiff's date last insured. The ALJ's decision states the date last insured is December 31, 2015. Tr. 16. Administrative documents from Plaintiff's initial application and request for reconsideration list Plaintiff's date last insured as December 31, 2016. Tr. 84, 113. However, this discrepancy does not affect the outcome in this case because the ALJ found Plaintiff disabled beginning November 13, 2015, prior to both dates.

denied initially and on reconsideration. Tr. 118, 127. Plaintiff passed away on December 16, 2017. Tr. 16, 265.

On June 18, 2018, Susan S., on behalf of Plaintiff, appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 36. At the hearing, the ALJ granted Plaintiff's motion to amend his alleged onset date to June 24, 2013. Tr. 39, 16. On August 9, 2018, the ALJ issued a partially favorable decision finding Plaintiff disabled beginning November 13, 2015. Tr. 28. The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on: "Type 2 Diabetes, Neuropathy in feet and fingers, Pancreatic onset from gallstones, Right and left knee surgery, Left shoulder surgery, Left elbow nerve surgery, Gallbladder removed, [and] Kidney stones." Tr. 271. At the time of Plaintiff's amended alleged onset date, he was 44 years old. *See* Tr. 26, 240. Plaintiff has a GED and past relevant work experience as truck driver. Tr. 26, 272.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137,

140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets [his/her] burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after his amended alleged onset date. Tr. 19. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "diabetes mellitus with neuropathy and peripheral artery disease." Tr. 18. However, the ALJ determined that since the

amended alleged onset date, Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 20. Prior to November 13, 2015, the ALJ concluded that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations:

> [S]tanding and/or walking must have been limited to two hours total in an eight-hour workday. Further, pushing and pulling with the bilateral lower extremities and the climbing of ramps and stairs, balancing, kneeling, crouching (bending at the knees) and crawling must have been limited to occasionally, while assigned duties must never have required climbing of ladders, ropes, or scaffolds. In addition, frequently stooping, bending at the waist must have been limited to frequently. Within the assigned work area, there must have been less than occasional, seldom to rare, exposure to hazards, such as machinery and heights.

Tr. 20. After November 13, 2015, the ALJ found that Plaintiff's residual functional capacity had one additional limitation: "being off task and/or away from the assigned duty station would have to have been tolerated within the assigned workplace." Tr. 24–25.

At step four, the ALJ concluded that Plaintiff could not perform his past relevant work as a truck driver. Tr. 26. At step five, the ALJ found that prior to November 13, 2015, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, such as "inspector," "order clerk," and "interviewer." Tr. 27. However, beginning on November 15, 2015, the ALJ found that "there are no jobs that exist in significant numbers in the national economy that the claimant can perform." Tr. 27–28. Thus, the ALJ found that Plaintiff "was not disabled prior to November 13, 2015, but became disabled on that date[.]" Tr. 28.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff contends that ALJ erred by: (1) improperly rejecting Plaintiff's subjective symptom testimony; (2) improperly rejecting the medical source statement of Leanne Wills, FNP; and (3) improperly discrediting the lay witness testimony of Susan S., Plaintiff's wife. This Court agrees.

### I.     Subjective Symptom Testimony

Plaintiff argues that the ALJ erred in discounting his subjective symptom testimony. Pl. Br. 6, ECF 14. The ALJ is responsible for determining credibility. *Vasquez*, 572 F.3d at 591. In assessing a claimant's testimony about subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929. The first stage is a threshold test in which the claimant must present objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage of this analysis, absent affirmative evidence of malingering, the ALJ must provide

clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Comm'r Soc. Sec. Admin*, 533 F.3d 1155, 1166 (9th Cir. 2008); *Lingenfelter*, 504 F.3d at 1036.

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Factors the ALJ may consider when making such determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in the testimony. *Ghanim, 763 F.3d at 1163*; *Tommasetti*, 533 F.3d at 1039. In addition, conflicts between a claimant's testimony and the objective medical evidence in the record can undermine a claimant's credibility. *Morgan v. Comm'r Soc. Sec. Admin.,* 169 F.3d 595, 600 (9th Cir. 1999).

When the ALJ's credibility findings are supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). But a general assertion that the plaintiff is not credible is insufficient; the ALJ must "state which … testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *see also Morgan*, 169 F.3d at 599.

Plaintiff last worked as a truck driver. Tr. 16, 273. In his function report, completed on September 28, 2015, Plaintiff reported that he was insulin dependent, could no longer drive, could not stand for more than fifteen minutes, and had lost feeling in his feet and fingertips. Tr. 295. He spent most of his day in his chair with his leg in the air because of open wounds on the bottom of his foot. Tr. 296. He reported that he could dress, bathe, care for his hair, shave, feed

himself, and use the toilet. Tr. 297. He could prepare simple meals taking him fifteen minutes. Tr. 297. He could do laundry and dishes. Tr. 298. His wife did yard care and house cleaning. Tr. 298. He would shop with his wife for groceries once a month when they got food stamps. Tr. 298. He reported that he did not go out to engage in social activities because it was too hard on his feet and he would get dizzy standing. Tr. 299. He could walk for about fifteen minutes before needing a half hour break. Tr. 299. He reported that he would use a foot brace when walking prescribed to him in March 2015. Tr. 299, 549.

The ALJ found that Plaintiff's subjective symptom testimony was "generally inconsistent with the record," emphasizing Plaintiff's treatment history. Tr. 23. An unexplained or inadequately explained, failure to seek treatment or follow a prescribed course of treatment can be a basis to discount a claimant's symptom testimony. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Conservative treatment and failure to seek out treatment can be "powerful evidence regarding the extent to which [a claimant] is in pain." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). However, no adverse credibility finding is warranted where a claimant has a good reason for failing to obtain treatment. *See Orn v. Astrue,* 495 F.3d 625, 638 (9th Cir. 2007). Gaps in medical treatment can also support an adverse credibility determination as long as failure to obtain treatment is not due to claimant's lack of funds or another "good reason[.]" *Id.*; *see also* SSR 16-3p, 2016 WL 1119029, at *8–9 (Commissioner will not find an individual's symptoms inconsistent with a lack of treatment without considering possible reasons, including inability to pay for treatment).

In discounting Plaintiff's testimony, the ALJ found that Plaintiff failed to seek examination and treatment for his condition. Tr. 23. The ALJ also found that Plaintiff failed to follow medical advice regarding the treatment of his condition, noting specifically that Plaintiff

"routinely admitted that he did not take medication, monitor blood sugars, and he did not follow up as directed." Tr. 23 (citing tr. 464, 469, 472, 498, 501, 704, 709). As further support for her conclusion, she emphasized that Plaintiff's A1C readings "gradually reduced and his diabetes eventually stabilized" when Plaintiff began complying with his medical provider's instructions. Tr. 23 (citing tr. 699, 702, 706). According to the ALJ, "the failure of the claimant to seek examination and treatment for the condition and follow medical advice reflects poorly on the consistency of the claimant's assertion that the condition was as disabling as he had alleged." Tr. 23.

The ALJ's conclusions are not clear, convincing, or supported by substantial evidence. First, contrary to the ALJ's first assertion that Plaintiff failed to seek out treatment during the relevant two-and-a-half-year period, Plaintiff visited with Family Nurse Practitioner Leann Willis at least eight times, tr. 498, 508, 517, 699, 704, 709, 717, 722, visited the emergency room at least six times, tr. 472, 464, 590, 689, 669, 648, saw an optometrist, tr. 737, and presented at the wound clinic, tr. 651. In addition, the ALJ failed to address evidence explaining why Plaintiff struggled to comply with recommended treatment between June 24, 2013, and November 13, 2015. *See* Pl. Br. 7. For example, the ALJ cited Plaintiff's testimony regarding blurred vision and focused on Plaintiff's failure to complete an eye examination a year after he was referred. Tr. 22. However, the record shows that the day that Plaintiff was referred for an eye exam, his medical provider noted that "he is struggling with bills and losing insurance." Tr. 510. And when Plaintiff finally went for an eye exam nearly a year after his referral, Plaintiff completed a "New Eyes Eyeglass Voucher Application Form" to prove his financial need, noting that his take home pay was $0 and that he needed eyeglasses "to be able to see" and "to get a job." Tr. 730. The record also shows that Plaintiff was struggling to make his appointments due to transportation issues.

Earlier in her decision, the ALJ notes that in March 2015, Plaintiff presented at the hospital because he stepped on a nail with his foot but did not present at the Wound Clinic until two months later. Tr. 22. However, in July 2015, a medical provider notes that Plaintiff stopped seeing the Wound Care Clinic "due to transportation issues." Tr. 667. The ALJ erred by failing to account for economic factors as possible reasons for Plaintiff not seeking out treatment when she made her adverse credibility finding.

Second, the ALJ's finding that Plaintiff's eventual compliance with his medical providers instructions stabilized his diabetes is also neither clear nor convincing. The medical record shows that since at least June 2013, Plaintiff's glucose and A1C readings were high, even when his medical provider reported that he was complying with treatment. Indeed, during the relevant period, Plaintiff's A1C readings ranged between 11.4% to greater than 14.0%. This is well above his goal of 7.0%, indicating that his diabetes was poorly controlled.[5] Tr. 472 (June 22, 2013: Plaintiff's glucose level was 568 and he was diagnosed with uncontrolled diabetes); 519 (July 1, 2013: Plaintiff's A1C level is greater than 14.0% and medical provider reports that she "do[es] not believe that [Plaintiff] will be able to bring his A1C level below 7 without adding insulin which will mean he cannot drive truck any longer"); 510 (September 13, 2013: A1C is 12.3%); 501 (June 17, 2014: A1C reading was 13.5% and Plaintiff was discharged with voucher for insulin); 722–25 (August 15, 2014: A1C reading is 13.0%); 717–19 (November 5, 2014: Plaintiff is reportedly compliant with follow-up and A1C reading is 11.9%); 579–80 (March 28, 2015:

---

[5] Higher A1C levels are linked to diabetes complications. *All About Your A1C*, Center for Disease Control and Prevention, https://www.cdc.gov/diabetes/managing/managing-blood-sugar/a1c.html (last updated Aug. 21, 2018); *see also Your A1C Results: What Do They Mean?*, American Diabetes Association, https://clinical.diabetesjournals.org/content/diaclin/24/1/9.full.pdf (last visited Oct. 8, 2020) (noting that A1C levels above 11% are indicative of very poor control and high health risk).

glucose level was 446); 670 (July 12, 2015: Plaintiff "found to have poorly controlled diabetes

with a glucose of 434"); 704 (July 22, 2015: A1C is 12.8%); 699–702 (August 19, 2015: A1C is

11.4%). Moreover, the stability of Plaintiff's otherwise high A1C does not undermine Plaintiff's

allegations as to the intensity, persistence, or limiting effects of his diabetes. *See, e.g. Timothy S.

v. Comm'r, Soc. Sec. Admin.*, No. 6:17-cv-02043-HZ, 2019 WL 2006689, at *5 (D. Or. May 3,

2019) ("[T]he stability of Plaintiff's symptoms does not indicate that the pain is resolved, only

that it is not getting worse."); *Kirk M. v. Comm'r, Soc. Sec. Admin.*, No. 6:17-cv-01663-HZ,

2018 WL 6651525, at *4 (D. Or. Dec. 19, 2018) (finding that a plaintiff's stable glaucoma did

not mean plaintiff was no longer visually impaired). Because the ALJ's reasoning for rejecting

Plaintiff's subjective symptom testimony was not clear, convincing, or supported by substantial

evidence, the ALJ erred in discounting Plaintiff's symptom testimony.

## II.     Other Medical Source

Plaintiff argues that the ALJ erred in failing to consider the opinion of Family Nurse

Practitioner Leann Willis, "effectively rejecting it without comment." Pl. Br. 16. FNP Willis was

Plaintiff's treating provider beginning in July 2013. *Id.*; Tr. 517. In October 2017, FNP Willis

completed a Medical Evaluation of Plaintiff's uncontrolled type 2 diabetes with neuropathy and

peripheral ulcers, stool incontinence, poor balance, joint pain, depression, alcohol use, and vision

loss. Tr. 2032. FNP Willis reported that Plaintiff's diabetes, neuropathy, chronic pain, and poor

vision were expected to worsen over time. Tr. 2032. She reported that his neuropathy had been

present since June 2010, and his uncontrolled diabetes had been present since June 2011. Tr.

2036. Her relevant clinical findings included unstable blood sugars in controlled hospital settings

and at home, recurrent infections of his leg, foot ulcers, and back pain. Tr. 2033. She opined that

Plaintiff's conditions were capable of causing his symptoms and were corroborated by objective

medical findings. Tr. 2033. FNP Willis noted that Plaintiff tired easily, would need to rest periodically during the day and to elevate his feet to decrease swelling and drainage of ulcers. Tr. 2033. FNP Willis opined that Plaintiff could stand and/or walk for fifteen to twenty minutes at a time and one to two hours in an eight-hour workday. Tr. 2034. He was limited to handling, fingering, and reaching bilaterally for 30% of an eight-hour workday and would require a thirty-minute break after using his hands or arms. Tr. 2035. The severity of his conditions would cause him to miss more than four workdays per month. Tr. 2036.

Under the applicable regulations, a family nurse practitioner is not an acceptable medical source. 20 C.F.R. §§ 404.1513(a), 416.913(a). Instead, this type of practitioner is an "other" medical source whose opinion is relevant to determining the severity of the claimant's impairments and how they affect the claimant's ability to function. 20 C.F.R. §§ 404.1514(d), 416.913(d). An ALJ may not reject the competent testimony of other medical sources without comment. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). To reject the competent testimony of other medical sources, the ALJ need only give "reasons germane to each witness for doing so." *Molina*, 674 F.3d at 1111 (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)); *Dale v. Colvin*, No. 3:13-cv-01187-HZ, 2014 WL 1917980, at *7 (D. Or. May 13, 2014) (because nurse practitioner was an "other source," ALJ could reject opinion for germane reasons).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.* at 1118–19. Additionally, "an

ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). Where an ALJ ignores lay witness testimony "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

The Commissioner concedes that the ALJ failed to discuss FNP Willis's opinion but argues that the error was harmless. Def. Resp. 5. First, the Commissioner argues that the ALJ's reasons for discounting Plaintiff's testimony, such as non-compliance and improvement with treatment, were good reasons for discounting Plaintiff's testimony and "serve equally well for discounting FNP Willis's similar opinion." Def. Resp. 5–6. Second, the Commissioner asserts FNP Willis's opinion was contradicted by more reliable evidence from an acceptable medical source, Mary Ann Westfall, M.D., who evaluated Plaintiff's medical evidence at the initial application phase. Def. Resp. 6 (citing tr. 24, 67–69, 79–81).

The Court disagrees. First, the ALJ erred in rejecting Plaintiff's subjective symptom testimony. As discussed above, the ALJ's reasoning—that Plaintiff did not comply with treatment and that his conditions improved with treatment—was not supported by substantial evidence. *See supra* Part I. Accordingly, these reasons are not sufficient to discount FNP Willis's opinion. *See Molina,* 674 F.3d at 1116 (holding that an "ALJ may not disregard lay witness testimony about the claimant's limitations if the ALJ has not validly rejected those limitations and their existence would alter the ultimate nondisabililty determination.").

Second, the Court cannot conclude that no reasonable ALJ would arrive at a different conclusion on the ultimate issue of disability when fully crediting FNP Willis's testimony. The

record shows that FNP Willis had a lengthy treating relationship with Plaintiff. When she completed his Medical Evaluation in 2017, she had been his medical provider for five years. Tr. 2032. And during the relevant period, Plaintiff saw FNP Willis at least eight times. *See* Tr. 498, 508, 517, 699, 704, 709, 717, 722. Plaintiff's wife, Susan S., testified that FNP Willis was the only healthcare provider Plaintiff saw "consistently" and that she was Plaintiff's "main doctor." Tr. 52; *see Revels v. Berryhill*, 874 F.3d 648, 665 (9th Cir. 2017) (finding that the fact that a nurse practitioner examined the claimant ten times over two years was a strong reason to assign weight to her opinion). Moreover, had FNP Willis's testimony about Plaintiff's limitations been fully credited as true, his condition would warrant a disability finding. *See* Tr. 57. At the hearing, the vocational expert testified that an additional finding to only occasional handling, fingering, and feeling, and an individual's need to miss for or more workdays per month or be off task more than 10% of the workday, would make an individual "unemployable." Tr. 57. FNP Willis's Medical Evaluation found that Plaintiff did experience such limitations. Tr. 2034–36. FNP Willis opined that Plaintiff could use his hands and fingers 30% of the time and reach with his arms 20% of the time during an eight-hour workday. Tr. 2035. She opined that Plaintiff would need to take a 30-minute break after handling or fingering, and that he would need to take approximately three to six unscheduled breaks during the eight-hour workday lasting between 20 to 60 minutes. Tr. 2035. As discussed above, FNP Willis opined that Plaintiff's medical problems would prevent him from maintaining a regular work schedule more than four days per month. Tr. 2036. Accordingly, because a reasonable ALJ when fully crediting the FNP Willis's testimony could come to a different determination on the issue of disability, the ALJ's disregard of FNP Willis's opinion was not harmless error.

///

II.    **Lay Witness Testimony**

Plaintiff asserts that the ALJ improperly rejected lay witness testimony provided by

Plaintiff's wife, Susan S. Pl. Br. 17. "Lay witness testimony as to a claimant's symptoms or how

an impairment affects the claimant's ability to work is competent evidence that the ALJ must

take into account." *Molina*, 674 F.3d at 1114. The ALJ must give reasons "germane to the

witness" when discounting the testimony of lay witnesses. *Valentine*, 574 F.3d at 694. In this

circuit, a germane reason is that the lay witness testimony conflicts with medical evidence,

*Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005), but not that it is unsupported by

medical evidence, *see Bruce v. Astrue,* 557 F.3d 1113, 1116 (9th Cir. 2009) (ALJ cannot

discredit lay testimony as not supported by medical evidence because SSR 88-13 directs the ALJ

to consider lay testimony when the claimant's alleged symptoms are unsupported by medical

records). The fact that lay testimony may offer a different perspective than medical records alone

is why such evidence is valuable at a hearing. *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir.

2017) (citing *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996)).

The ALJ assigned little weight to Susan. S.'s statements, finding they were inconsistent

with Plaintiff's contemporaneous reports and "generally not consistent with the medical evidence

prior to the established onset date." Tr. 24. Specifically, the ALJ pointed out that Susan S. was

mistaken that Plaintiff began experiencing foot ulcers in 2014. Tr. 24. The ALJ also claimed that

Susan S.'s testimony that Plaintiff required "around the clock care" and was "essentially

bedridden" was inconsistent with both the medical record and Plaintiff's contemporaneous

testimony. Tr. 24. The ALJ found these statements were inconsistent because Plaintiff reported

in both his function report and to his providers that he could make his own meals and was

independent in his ability to clothe himself, bathe himself, and ambulate without assistance. Tr. 24, 570, 574.

The ALJ's findings are not supported by substantial evidence in the record. First, as Plaintiff notes and as the record shows, Plaintiff did begin experiencing foot ulcers in 2014. Pl. Br. 18; Tr. 498, 725. In June 2014, the medical record documents foot ulcers and notes that Plaintiff stepped on a tack that he could not feel in his foot Tr. 498–501. And in August of that same year, Plaintiff was diagnosed with an ulceration and cyanosis of the left toes. Tr. 725. Accordingly, the ALJ erred in her finding that Susan S. was mistaken as to the date Plaintiff began experiencing foot ulcers.

Second, as Plaintiff explained in his function report, Plaintiff spent most of the day in his chair with his leg elevated, did not leave the house other than to shop with his wife for groceries once a month, and could only stand or walk for about fifteen minutes. Tr. 295–99. Thus, while Plaintiff may not have required "around the clock care," Plaintiff's contemporaneous reports of his limited activities of daily living were not inconsistent with Susan S.'s testimony that Plaintiff was "essentially bedridden." Consequently, the ALJ erred in rejecting Susan S.'s testimony.

## III.    Remand

Plaintiff asks the Court to credit the testimony as true and remand for payment of benefits or, alternatively, remand for further administrative proceedings. To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014); *Treichler v. Comm'r*, 775 F.3d 1090, 1100 (9th Cir. 2014). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020. Second, the record must be fully developed, and further administrative proceedings would serve no useful purpose. *Id.* Third, if the Court

remands the case and credits the improperly discredited evidence as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.* The "ordinary remand rule" is "the proper course," except in rare circumstances. *Treichler*, 775 F.3d at 1101.

The ordinary remand rule is the proper course in this case.  There is a conflict between the opinion of the stage agency physician and the opinion of FNP Willis. The state agency physician found that Plaintiff's diabetes mellitus and peripheral neuropathy were severe conditions, but she concluded that Plaintiff had no manipulation limitations. Tr. 68, 80. FNP Willis, on the other hand, opined that Plaintiff would be limited in his ability to handle, finger, and feel objects. Tr. 2034–36. In addition, it is unclear from FNP Willis's medical evaluation how far back into the relevant period Plaintiff experienced limitations in his ability to sit, stand, walk, use his hands and arms, and maintain a regular work schedule. Tr. 2032–36. In the evaluation, FNP Willis marked that these limitations had not been present since she began treating Plaintiff in 2013. Tr. 2036. She reported that Plaintiff's neuropathy of his feet was present since June 2010 and uncontrolled diabetes since June 2011 but did not specify how far back Plaintiff experienced the described limitations. Tr. 2036. The ALJ—not the district court— should resolve these ambiguities and conflicts in the medical testimony. *See Andrews v. Shalala*, 53 F.3d 1045, 1039 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in the medical testimony, and for resolving ambiguities."). Accordingly, the Court remands this case for further proceedings.

///

///

///

## CONCLUSION

Based on the foregoing, the Court REVERSES the Commissioner's decision that Plaintiff was not disabled prior to November 13, 2015, and REMANDS this case for further administrative proceedings.

IT IS SO ORDERED.

DATED: ___November 29, 2020_____.


_Marco Hernandez_____
MARCO A. HERNÁNDEZ
United States District Judge